Lindsi M. Weber (AZ Bar No. 025820)
**THE BURGESS LAW GROUP**
3131 E. Camelback Road, Ste. 224
Phoenix, AZ 85016
Telephone: 602.806.2100
lindsi@theburgesslawgroup.com

*Counsel for Beyond Blond Productions, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT

## THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>EDWARD HELDMAN III,<br><br>Debtor. | Chapter 13<br><br>Case No. 2:22-bk-07610-MCW |
| BEYOND BLOND PRODUCTIONS, LLC<br><br>Movant,<br>v.<br><br>EDWARD HELDMAN III,<br><br>Respondent. | **MOTION TO DISMISS BANKRUPTCY CASE, AND ALTERNATIVE MOTION FOR RELIEF FROM THE AUTOMATIC STAY REGARDING PREPETITION LITIGATION** |

Beyond Blond Productions, LLC ("**BBP**"), an interested party and creditor in the above-captioned Chapter 13 bankruptcy case (the "**Bankruptcy Case**") of Edward Heldman III (the "**Debtor**" or "**Heldman**"), hereby files this Motion requesting an order dismissing this Bankruptcy Case, or alternatively, respectfully asks this Court for an order lifting the automatic stay for "cause" under § 362(d) of Title 11 of the United States Code (the "**Bankruptcy Code**") with respect to certain prepetition litigation involving BBP and the Debtor pending in the Central District of California. This Motion is supported by the accompanying Declaration of Milord Keshishian dated December 7, 2022 attached hereto as **Exhibit 1** (along with attachments, the "**Keshishian Declaration**"), the record in this Case, and any evidence or additional information gained through discovery or otherwise.

# I. FACTUAL AND PROCEDURAL BACKGROUND.

1. The Debtor commenced this case by filing a voluntary petition for relief under Chapter 13 of Title 11 of the Bankruptcy Code on November 14, 2022 (the "**Petition Date**").

2. Approximately one hour prior to filing Debtor's Chapter 13 Petition in the District of Arizona, the Debtor orchestrated the filing of two Chapter 11 Subchapter V, cases in the District of Delaware for two entities: COMEDYMX, LLC, and COMEDYMX, INC. (together, the "**ComedyMX Entities**").

3. BBP is in the business of helping content owners leverage their music and video catalogs into new and different product offerings for digital distribution. BBP uses its established relationships with top digital providers, like Amazon and Google, to help conform the works to platform specifications, as well as create targeting metadata and artwork for effective conversion rates. BBP, for its own business, also acquires and purchases public domain videos and cartoon classics, makes compilations of same, and lists the works on video streaming platforms, including Amazon.com's Prime Video Direct.

4. Beginning in late 2016 and/or early 2017, BBP acquired BetaSP tapes and other sources of cartoon classics and began digitizing and editing the same with a deck captured to a computer. The cartoon classics compilations were then formatted to comply with Amazon Video.

5. BBP's quality digitization became popular with viewers seeking to watch cartoon classics and BBP began receiving substantial revenue from Amazon for customers streaming, renting and purchasing videos.

6. The ComedyMX Entities are BBP's direct competitors, creating compilations of cartoon classics that stream on Youtube, but the ComedyMX Entities wanted to oust BBP from Amazon so the ComedyMX Entities could take over BBP's platform. To unfairly compete with BBP, in 2017, Heldman surreptitiously used an anonymous Amazon user name to post false negative reviews on BBP's videos without disclosing that he is a biased competitor.

7. Then, in February 2020, Heldman issued a baseless trademark infringement takedown notice to Amazon, but Amazon rejected the notice because Heldman did not have a registered trademark. Undeterred, in March 2020, Heldman fabricated seven bad faith copyright takedown notices to deceive Amazon and it took down seven of BBP's videos. As a result of those notices, Amazon took down the seven videos, thereby causing BBP to lose its revenue stream from viewers who rented, purchased and/or streamed the videos on Amazon's Video Direct Platform.

8. Heldman is the 100% owner of the ComedyMX Entities and is the sole employee. Prior to December 16, 2022 Heldman controlled every aspect of the ComedyMX Entities' operations and made all decisions for the ComedyMX Entities.

9. On June 23, 2020, BBP commenced litigation against the ComedyMX Entities and Heldman in the United States District Court for the Central District of California (the "**District Court**"), Case No. 2:20-cv- 05581 DSF-(GJS) (the "**California Litigation**"). A copy of the Third Amended Complaint (the current operative pleading) in the California Litigation is attached as Exhibit A to the Keshishian Declaration.

10. On August 14, 2020, the District Court granted BBP's preliminary injunction motion and ordered the ComedyMX Entities to withdraw the baseless takedown notices to Amazon. *Beyond Blond Prods., LLC v. Heldman,* 479 F.Supp.3d 874 (C.D. Cal. 2020) ("**August 2020 Preliminary Injunction Order**"). A true and correct copy of the August 2020 Preliminary Injunction Order is attached as Exhibit B to the Keshishian Declaration.

11. On February 17, 2022, the District Court dismissed the ComedyMX Entities' infringement counterclaims against BBP with prejudice. *Beyond Blond Prods., LLC v. Heldman*, No. CV205581DSFGJSX, 2022 WL 803392, at *5 (C.D. Cal. Feb. 17, 2022), *opinion clarified,* No. CV205581DSFGJSX, 2022 WL 2783838 (C.D. Cal. June 8, 2022).

12. In March of 2022, Heldman violated the Court's August 2020 Preliminary Injunction Order by issuing new takedown notices to Amazon for BBP's seven restored videos resulting in Amazon's removal of same. On March 30, 2022, the District Court Judge found Heldman in contempt of the August 2020 Preliminary Injunction Order and again

1  ordered him to withdraw the takedown notices to Amazon. A true and correct copy of the

2  Contempt Order is attached as Exhibit C to the Keshishian Declaration.

3       13.    Having lost his case, Heldman launched an incessant barrage of emails

4  disrespecting the District Court Judge, the Magistrate Judge, and threatening and harassing

5  BBP's principal and its counsel. Thus, on July 19, 2022, the District Court Judge entered an

6  Order granting BBP's Preliminary Injunction (the "**2022 Injunction Order**"). The 2022

7  Injunction Order not only prohibits Heldman and the ComedyMX Entities from "transferring

8  or encumbering any assets", but also enjoins Heldman and the ComedyMX Entities from

9  continuing their campaign to threaten and harass BBP, Ms. Justice and those associated with

10  them. The 2022 Injunction Order also prohibits Heldman and the ComedyMX Entities from

11  coming within 100 feet of Ms. Justice or BBP's counsel, except when in court; coming within

12  100 feet of Ms. Justice's residence or BBP's counsel's office; or directing others to do any of

13  the enjoined acts on Defendants' behalf. A true and correct copy of the 2022 Injunction Order

14  is attached as Exhibit D to the Keshishian Declaration.

15       14.    On October 31, 2022, BBP filed a motion to strike Heldman's and CMXs'

16  answer and enter default judgment against defendants for their persistent violations of the

17  District Court orders, including orders compelling Heldman to produce electronic devices for

18  forensic analysis and access to records and documents he had refused to produce in contempt

19  of court orders.

20       15.    Instead of opposing BBP's motion to strike the answers, Heldman and the

21  ComedyMX Entities filed an ex parte application to extend the hearing dates on BBP's

22  motion, which the District Court denied and set the Heldman parties' opposition due date as

23  "noon on November 14, 2022." District Court Dkt. #334.

24       16.    Heldman and the ComedyMX Entities failed to timely file an opposition to

25  BBP's motion, instead filing for bankruptcy.

26       17.    In spite of Heldman and the ComedyMX Entities' conduct, BBP sought to

27  negotiate a resolution with Heldman and the ComedyMX Entities prior to their filing their

28  respective bankruptcy cases. They chose, instead, to each file for bankruptcy, the ComedyMX

Entities in Delaware and Heldman in Arizona.

18.    Heldman and the ComedyMX Entities have repeatedly violated the 2022 Injunction Order in the time since it was issued by the District Court. Indeed, Heldman and the ComedyMX Entities not only violated the 2022 Injunction Order prepetition, but continued to do so post-petition, including as recently as two weeks ago. Subsquent to the Petition Date, Heldman and the ComedyMX Entities sent more than 40 emails directly to Mr. Keshishian, BBP's litigation counsel, and BBP's principal Michelle Justice. The emails are highly offensive, racist, misogynistic, threatening and harassing. *See* Keshishian Declaration, Exhibit E.

19.    The emails also contain threats that Heldman will act to "devalue" the ComedyMX Entities' YouTube channels by posting offensive content so that Google will demonetize them and Heldman will never settle with BBP. Keshishian Decl. ¶ 9.

20.    Mr. Keshishian has previously asked Heldman's and the ComedyMX Entities' counsel (including bankruptcy counsel) to instruct Heldman and the ComedyMX Entities to stop sending the offending emails. But to no effect. The emails continued, unabated.

21.    The messages contained in the emails are extremely disturbing, to say the least. They evidence that Heldman is not acting rationally, is incapable of complying with court orders and cannot reasonably be relied upon to act as a fiduciary to the bankruptcy estates or their creditors. Indeed, in one email from December 4, 2022, Helman threatens that "[y]ou cannot defeat someone who doesn't give a damn about the law." Keshishian Decl. ¶ 11, Exhibit E.

22.    On December 9, 2022, the Delaware Bankruptcy Court conducted hearings on the ComedyMX Entities' motions for approval of the use of cash collateral and cash management systems. Those motions were opposed by BBP and also, the Office of the United States Trustee ("**UST**"), primarily on grounds that the ComedyMX Entities' actions in violation of the 2022 Injunction Order and Heldman's clear statements that he has no intention of complying with court orders or, more broadly, any laws that apply to him or the ComedyMX Entities, rendered him incapable of operating the ComedyMX Entities as a fiduciary to the

estates and their creditors.  BBP requested that the Court decertify the bankruptcy cases so that they are no longer subchapter V cases and asked that the Court appoint a chapter 11 trustee.

23.     As a result of the objections and arguments interposed by BBP and the UST, the evidence that Heldman has not commenced or prosecuted the bankruptcy cases in good faith, and the concerns expressed by the Delaware Bankruptcy Court on the record of the hearings, the Delaware Bankruptcy Court instructed that BBP and the UST file motions seeking as relief the removal of the debtors-in-possession and/or alternative relief.

24.     After briefing and an evidentiary hearing, the Delaware Bankruptcy Court recently removed the ComedyMX Entities as debtors in possession, and granted the Subchapter V Trustee expanded powers, including the power to operate the business of the ComedyMX Entities.  *See* DEBK Order dated December 16, 2022 attached as **Exhibit 2**.

## II.    REQUEST FOR RELIEF.

### A.    DISMISSAL OF THE BANKRUPTCY CASE.

Pursuant to this Motion, BBP seeks dismissal of the Debtor's Chapter 13 Bankruptcy Case for cause.  At this juncture, bad faith is the primary basis for the "cause" to support dismissal of the Bankruptcy Case.  However, if and to the extent that further grounds are discovered in the course of the upcoming 341(a) meeting of creditors or during discovery, BBP reserves the right to assert additional bases and grounds for dismissal.

### B.    STAY RELIEF TO CONTINUE PREPETITION LITIGATION.

Pursuant to this Motion, BBP seeks stay relief for cause under § 362(d) with respect to the California Litigation so that BPP may proceed with liquidating the amount of its claims against the Debtor, and also to enforce the existing injunction and contempt orders entered in the California Litigation.[1]  BBP is requesting that the entirety of the California Litigation

---

[1]     Under Ninth Circuit law, efforts to enforce the injunctions and contempt orders entered in the California Litigation are not stayed by 11 U.S.C. § 362. *See, e.g., Kukui Gardens Corp. v. Holco Cap. Grp., Inc.,* 675 F. Supp. 2d 1016, 1028 (D. Haw. 2009) ("Judge Chang's hearing on whether sanctions should be imposed was proper because the Ninth Circuit, in *Hooker,* observed that the Court has the ability to hold a hearing as to whether it can sanction a bankrupt defendant despite the automatic stay.") (citing *David v. Hooker, Ltd.,* 560 F.2d 412, 415 (9th Cir.1977)); *see also Seiko Epson Corp.*

(including but not limited to the contempt proceedings and related damages) be granted relief from the automatic stay up through and including entry of judgment. Assuming that this Arizona Bankruptcy Case remains pending, any judgment or award obtained by BBP in the California Litigation will be brought back to this Bankruptcy Court for purposes of enforcement. BBP does not seek as part of the relief requested in this Motion to pursue the execution of any money judgment obtained by BBP or to otherwise take any action to enforce any such money judgment against the Debtor or the bankruptcy estate so long as this Bankruptcy Case remains. BBP only seeks to resolve the foregoing matters before the tribunal these claims were pending before as of and long prior to the Petition Date.

## III. LEGAL ANALYSIS.

### A. DISMISSAL OF THE BANKRUPTCY CASE.

For Chapter 13 cases, §§ 1307(c)(1) through (11) provide that the bankruptcy court may convert or dismiss, depending on the best interests of the creditors and the estate, for any of the enumerated circumstances. Although not specifically listed, bad faith is a recognized "cause" for dismissal under § 1307(c). *In re Eisen,* 14 F.3d 469, 470 (9th Cir.1994) ("A Chapter 13 petition filed in bad faith may be dismissed 'for cause' pursuant to 11 U.S.C. § 1307(c)."); *In re Hopkins,* 201 B.R. 993, 995 (D.Nev.1996) (holding that the debtor's filing of frivolous tax returns with no intention to pay taxes warranted dismissal of a Chapter 13 petition for bad faith); *In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999) ("We hold that bad

---

*v. Nu-Kote Int'l, Inc.,* 190 F.3d 1360, 1365 (Fed. Cir. 1999) ("The previously issued injunction against further infringement remains in effect during Nu–Kote's bankruptcy. As for any tort, Nu–Kote's bankruptcy does not protect it from liability for ongoing violations of the injunction.") (citing *In re Chateaugay Corp.,* 944 F.2d 997, 1008 (2d Cir.1991); *In re Cinnabar 2000 Haircutters, Inc.,* 20 B.R. 575, 577 (Bankr.S.D.N.Y.1982); and *In re Cohoes Industrial Terminal, Inc.,* 62 B.R. 369, 378 (Bankr.S.D.N.Y.1986) *aff'd* 70 B.R. 214 (S.D.N.Y.1987)).

In an abundance of caution and also because the interests of judicial and party efficiency and economy would be best served by permitting the District Court overseeing the California Litigation to proceed up through and including entry of judgment liquidating the longstanding claims and disputes between the Debtor and BPP, stay relief is being sought from this Court to allow the California Litigation to proceed in its entirety. In the event that this Court does not believe that dismissal of the Bankruptcy Case is appropriate, BPP will return to this Bankruptcy Court with any judgment obtained in the California Litigation and will not proceed with enforcement of that judgment without this Bankruptcy Court's approval or further permission.

1  faith is "cause" for a dismissal of a Chapter 13 case with prejudice under § 349(a) and §

2  1307(c)").  As further set forth in the Ninth Circuit *Leavitt* decision:

3      Bad faith, as cause for the dismissal of a Chapter 13 petition with prejudice,
       involves the application of the "totality of the circumstances" test.  The
4      bankruptcy court should consider the following factors:

5      (1) whether the debtor misrepresented facts in his [petition or] plan, unfairly
       manipulated the Bankruptcy Code, or otherwise [filed] his Chapter 13
6      [petition or] plan in an inequitable manner,

7      (2) the debtor's history of filings and dismissals,
       (3) whether the debtor only intended to defeat state court litigation, and
8      (4) whether egregious behavior is present.

9      A finding of bad faith does not require fraudulent intent by the debtor.
       [N]either malice nor actual fraud is required to find a lack of good faith.
10     The bankruptcy judge is not required to have evidence of debtor ill will
       directed at creditors, or that debtor was affirmatively attempting to violate the
11     law-malfeasance is not a prerequisite to bad faith.

12

13 *In re Leavitt*, 171 F.3d 1219, 1224–25 (9th Cir. 1999) (citing  *In re Eisen,* 14 F.3d 469, 470

14 (9th Cir.1994);  *In re Tomlin,* 105 F.3d 933, 936–37 (4th Cir.1997);  *In re Goeb*, 675 F.2d

15 1386, 1391 (9th Cir.1982);  *In re Nash*, 765 F.2d 1410, 1415 (9th Cir.1985); In re

16 Chinichian, 784 F.2d 1440, 1445–46 (9th Cir.1986);  *In re Bradley*, 38 B.R. 425, 432

17 (Bankr.C.D.Cal.1984);  *In re Powers*, 135 B.R. 980, 994 (Bankr.C.D.Cal.1991);  *In re*

18 *Waldron*, 785 F.2d 936, 941 (11th Cir.1986)).

19     The bankruptcy court is not required to find that each *Leavitt* factor is satisfied or to

20 weigh each factor equally. *See Khan v. Barton (In re Khan*), 523 B.R. 175, 185 (9th Cir. BAP

21 2014). Rather, "[t]he Leavitt factors are simply tools that the bankruptcy court employs in

22 considering the totality of the circumstances." *Id*.

23     The facts of this Case demonstrate bad faith on the part of the Debtor, and this

24 Bankruptcy Case exhibits many of the hallmarks of a bad faith filing.  For example, the

25 Debtor has failed to list various required information in his Schedules and Statement of

26 Financial Affairs and has provided partial and inaccurate information in his filings to date.

27 Furthermore, the Debtor's filing here in Arizona appears to be part of an orchestrated scheme

28 to delay and otherwise prevent enforcement of the valid, existing, enforceable injunction

orders entered in the California Litigation against the Debtor and his entities.

In addition, the Debtor appears to have little or no need for bankruptcy protection, where he lists non-exempt available liquid assets in excess of $102,000, and total claims of only $12,254. *See* Dkt. #17 at p 7 of 7; *see also* Petition at Dkt. #1 (listing assets of $0-$50,000 and liabilities of $0-$50,000).

Finally, there are significant questions as to whether the Debtor is even eligible for relief under Chapter 13, where he has no current income and has provided no evidence of any current employment or income to this Court. *See* Dkt. #14 ("Debtor has received no payment advices, pay stubs, or other evidence of payment from any employer within 60 days prior to the filing of the petition"). Moreover, based on the recent ruling from the Delaware Bankruptcy Court, it does not appear that the Debtor will be receiving any income or payments from the ComedyMX Entities due to his own misconduct and corresponding removal from management of those entities.

In sum, there is no situation here in need of reorganization, and no current income or operation from which to reorganize. The filing of this Bankruptcy Case was clearly in bad faith, designed only to stall the California Litigation and escape the consequences of Heldman's improper and harassing conduct resulting in the entry of injunctive and contempt orders against him. Therefore, this Case should be dismissed for cause.

**B.      STAY RELIEF TO CONTINUE PREPETITION LITIGATION.**

Alternatively, if this Case is not dismissed for cause under Code § 1307(c), BBP respectfully submits that cause exists to lift the automatic stay under Code § 362(d)(1) to allow BBP to continue the California Litigation and seek appropriate redress and relief from the District Court as further set forth above.

Bankruptcy Code § 362(d) provides that upon the request of a party in interest and after notice and a hearing, the court "shall" grant relief from the automatic stay for "cause." "'Cause' has no clear definition and is determined on a case-by-case basis." *In re Shaffer*, 563 B.R. 301, 306 (Bankr. D. Ariz. 2016). Here, taking into account the totality of circumstances, "cause" exists to lift the stay to permit the California Litigation to proceed.

1    Relief under the bankruptcy Code is designed to allow debtors to seek to reorganize

2  in good faith – not to seek shelter while foisting their improper conduct onto others. *See In*

3  *re Trust*, 526 B.R. 668, 681 (Bankr. N.D. Tex. 2015) (quoting *Matter of Little Creek*

4  *Development Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986) ("Requirement of good faith prevents

5  abuse of the bankruptcy process by Debtors whose overriding motive is to delay creditors

6  without benefitting them in any way or to achieve reprehensible purposes. Moreover, a good

7  faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their

8  powerful equitable weapons … available only to those Debtors … with 'clean hands.'")).

9    Bankruptcy courts are afforded discretion and "wide latitude in crafting relief from the

10  automatic stay." *In re Delaney-Morin*, 304 B.R. 365, 369 (BAP 9th Cir. 2003). "Every

11  bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a

12  standard of good faith for the commencement, prosecution, and confirmation of bankruptcy

13  proceedings." *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986); *see also In*

14  *re WGMJR, Inc.*, 435 B.R. 423, 433 (Bankr. S.D. Tex. 2010) ("The absence of good faith

15  constitutes cause for lifting of the automatic stay"). And *Little Creek* provides instruction

16  regarding when the "totality of circumstances" equate to a lack of good faith in the filing of

17  a bankruptcy case. Reading it, such instruction could have been drafted to apply to this very

18  case (although admittedly the decision was from a Chapter 11 case, not Chapter 13):

19
20   There are generally no employees except for the principals, little or no cash
     flow, and no available sources of income to sustain a plan of reorganization or
     to make adequate protection payments pursuant to 11 U.S.C. Sections 361,
21   362(d)(1), 363(e) or 364(d)(1). Typically, there are only a few, if any,
     unsecured creditors whose claims are relatively small. The property has usually
22   been posted for foreclosure because of arrearages on the debt, and the debtor
     has been unsuccessful in defending actions against the foreclosure in state
23   court. Alternatively, the debtor and one creditor may have proceeded to a
     standstill in state court litigation, and the debtor has lost or been required to
24   post a bond which it cannot afford. Bankruptcy offers the only possibility of
     forestalling loss of the property.
25

26  *Little Creek*, 779 F.2d at 1073; *see also In re Thane Dev. Associates L.P.*, 143 B.R. 310, 312

27  (Bankr. D. Mass. 1992) (Chapter 11 petitions filed in bad faith, warranting dismissal of cases,

28  where Debtors' schedules listed only three unsecured creditors and two of those creditors

1  were insiders, petitions had been filed at time of previous threatened foreclosure, there were

2  allegations of improper conduct on part of two insiders, petitions were filed on same day as

3  scheduled foreclosure, foreclosed property was sole or major asset of Debtors, Debtors had

4  no ongoing business, and filed solely to create automatic stay).

5      The totality of circumstances in this Bankruptcy Case point squarely to a lack of good

6  faith in the filing of this Chapter 13 case: prepetition history of improper conduct that has

7  continued post-petition; no available sources of income to sustain a plan; very few creditors;

8  pending litigation in which the Debtor has lost significantly; and utilizing bankruptcy to

9  forestall the consequences of the Debtor's willful contemptuous conduct.

10      Heldman's decision to file bankruptcy cases in multiple jurisdictions also weighs in

11  favor of granting stay relief to allow the parties to liquidate and establish the claims against

12  the Debtor in the original forum, rather than address the issues in multiple cases that are more

13  than 2,000 miles apart from one another.  One can only presume that the primary, if not sole,

14  purpose of Heldman's decision to file the bankruptcy cases for the ComedyMX Entities in a

15  venue so distant from this Court, his creditors and, in particular, the California Litigation was

16  to impose additional cost and complication upon BBP and its efforts to liquidate its claims

17  before the District Court.  Upon information and belief, the District Court judge was on the

18  verge of entering a default judgment due to Debtors' failure to provide discovery and their

19  violations of its orders when ComedyMX Entities and Heldman filed their petitions.

20      Bankruptcy serves many purposes but avoiding ongoing litigation in a forum that is

21  best suited to adjudicate multi-party copyright and trademark-based disputes is not one of

22  them. After two years of intensive litigation, the District Court has become intimately familiar

23  with the facts underlying the California Litigation. The District Court has extensive history

24  and experience with the parties, their claims, and their defenses. It has ruled on dispositive

25  motions, and substantial discovery has been conducted to date.  The District Court has greater

26  expertise as to the specific facts and law relevant to a resolution of the California Litigation.

27      "[O]ne of the primary purposes in granting relief from the stay to permit claim

28  liquidation is to economize judicial resources." *In re Peterson*, 116 B.R. 247, 250 (D. Colo.

1990). Here, judicial economy would be served by lifting the automatic stay and allowing the California Litigation to continue to move forward in the one forum where it is presently postured to be adjudicated quickly. It would require an excessive amount of resources by the parties and the Court for this Court to be able to arrive at the same level of knowledge and expertise as the District Court now possesses.

Perhaps most importantly, the adjudication of BBP's claims in the District Court will permit BBP's claims to be litigated in a single forum and avoid any risk of there being inconsistent rulings by two or more separate courts. Based upon the foregoing, the District Court can more efficiently adjudicate all of BBP's claims, apportion liability, and calculate damages and stay relief is appropriate to permit the California Litigation to proceed to conclusion.

In addition, the Debtor does not currently have, and has no prospects to generate, income to sustain a Chapter 13 case or plan. The Debtor has not filed or pursued this Bankruptcy Case in good faith. Thus, "cause" exists for stay relief under 11 U.S.C. § 362(d)(1).

Finally, pursuant to 11 U.S.C. § 362(g), the Debtor bears the burden of proof on all applicable issues arising under § 362(d) (because equity in property is not at issue here). The Debtor therefore has the burden of proof on all issues arising under Section 362(d)(1) to establish that cause does not exist for lifting of the stay.

## CONCLUSION

WHEREFORE, BBP respectfully requests that for all of the reasons set forth in this Motion, that the Court enter an order: (i) granting the Motion, (ii) dismissing this Case for cause; (iii) alternatively, lifting the automatic stay for "cause" to allow BBP to pursue the California Litigation; (iv) waiving the Bankruptcy Rule 4001(a)(3) fourteen (14) day stay period; and (v) granting BBP such further relief as is just and appropriate at law or in equity.

RESPECTFULLY SUBMITTED this 22nd day of December, 2022.

THE BURGESS LAW GROUP

By: _/s/ Lindsi M. Weber_

|   |   |
|---|---|
| 1 | Lindsi M. Weber |
| 2 | 3131 E. Camelback Road, Ste. 224<br>Phoenix, Arizona 85016 |
| 3 | *Counsel for Beyond Blond Productions* |
| 4 | |
| 5 | COPIES of the foregoing were served<br>this 22nd day of December, 2022 via the |
| 6 | Court's CM/ECF Notification System |
| 7 | on all parties that requested notice in this Case and<br>by US Mail on the following: |
| 8 | |
| 9 | William Erik Markov<br>HARTLEY MARKOV LAW |
| 10 | 11225 N 28th Dr., Ste. B-103<br>Phoenix, AZ 85029 |
| 11 | bill@hartleymarkov.com |
| 12 | *Attorney for the Debtor* |
| 13 | Edward J. Maney |
| 14 | 101 N. First Ave., Suite 1775<br>Phoenix, AZ 85003 |
| 15 | *Trustee* |
| 16 | Office of the U.S. Trustee |
| 17 | 230 North First Avenue, Suite 204<br>Phoenix, AZ 85003 |
| 18 | *U.S. Trustee* |
| 19 | Nationstar Mortgage LLC d/b/a Mr. Cooper |
| 20 | PO Box 619096<br>Dallas, TX 75261-9741 |
| 21 | |
| 22 | Michael Chen<br>McCarthy & Holthus LLP |
| 23 | 2763 Camino Del Rio S, Suite 100<br>San Diego, CA 92108-2607 |
| 24 | *Attorney for Nationstar Mortgage LLC* |
| 25 | By: */s/ Angie Renteria* |
| 26 | |
| 27 | |
| 28 | |